## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In or around March 2012, the Defendant, **SATBIR THUKRAL** ("**THUKRAL**"), a resident of Maryland, was hired by the Internal Revenue Service ("IRS") as a computer engineer. **THUKRAL** served in a GS-15 position supervising various information technology ("IT") contracts for the IRS. **THUKRAL** was a public official as defined in 18 U.S.C. § 201(a)(1) because **THUKRAL** was an employee acting for or on behalf of the IRS, which is an agency of the United States.

From at least in or around October 2018 through in or around August 2022, **THUKRAL** corruptly demanded, sought, received, or accepted cash payments in return for being influenced in the performance of official acts, and being induced to do or omit to do acts in violation of **THUKRAL's** official duty—namely, in exchange for helping acquaintances and their businesses procure and continue work on subcontracts with the IRS. **THUKRAL** obtained at least approximately $120,000 in illicit payments from Individual 1, as described below. **THUKRAL** also obtained approximately $2,800 from Co-conspirator 1 ("CC-1"), which CC-1 obtained from another individual, as described below.

### THUKRAL's Interactions with Individual 1 and Company 1

Individual 1 was an IT professional who owned Company 1. Company 1 was based in New Jersey. In or around July 2017, Individual 1 was terminated from a long-held employment position. Individual 1 was unemployed when, in or around March 2018 and May 2018, Individual 1 emailed Individual 1's resume to **THUKRAL**. On or around September 26, 2018, Company 1 began working on a subcontract for the IRS that **THUKRAL** supervised.

On or about October 20, 2018, Individual 1 saw **THUKRAL** at a school reunion in Pennsylvania. From that point, **THUKRAL** corruptly demanded, sought, received, or accepted from Individual 1 a certain portion of Individual 1's earnings from Company 1's work on the IRS subcontract that **THUKRAL** supervised. **THUKRAL** subsequently corruptly demanded, sought, received, or accepted from Individual 1 a portion of the earnings that two employees of Company 1 made based on work they performed on the IRS subcontract that **THUKRAL** supervised.

Between in or around 2018 and in or around 2020, Individual 1 made multiple payments to **THUKRAL**, which **THUKRAL** demanded, sought, received, or accepted in return for being influenced in the performance of official acts, and being induced to do or omit to do acts in violation of **THUKRAL's** official duty. In total, Individual 1 paid **THUKRAL** more than $120,000. Generally, Individual 1 delivered these payments in-person to **THUKRAL** at various locations, including in Maryland. For some of the meetings, Individual 1 traveled with the cash payments from outside of Maryland to Maryland. On one occasion, a relative of **THUKRAL**

collected the payment from Individual 1 in New Jersey. In or around December 2018, **THUKRAL**, while traveling internationally, accepted a payment in a foreign country from a family member of Individual 1 on Individual 1's behalf.

**THUKRAL** demanded, sought, received, or accepted these payments with corrupt intent in return for being influenced in the performance of official acts and being induced to do or omit to do acts in violation of **THUKRAL**'s official duty—namely, to assist Individual 1 and Company 1 in the procurement and continuation of subcontracting work with the IRS.

On or about February 4 and 6, 2021, during recorded calls (which were not at the direction of law enforcement), Individual 1 told **THUKRAL** that Individual 1 would not pay any more money to **THUKRAL**. **THUKRAL** attempted to extort Individual 1, including by threatening that Individual 1 would suffer economic consequences if Individual 1 did not continue to pay **THUKRAL**. **THUKRAL** claimed he (**THUKRAL**) was sharing the payments with higher-level employees at the IRS, a claim which **THUKRAL** made up in order to deceive and coerce Individual 1 into making more payments. But having received assurances from at least one other individual that Individual 1 would not lose IRS subcontracting work if Individual 1 stopped paying **THUKRAL**, Individual 1 made no further payments to **THUKRAL**.

On or about February 10, 2023, Individual 1—at the direction of law enforcement—surreptitiously recorded an in-person meeting with **THUKRAL**. During that recorded meeting, Individual 1 told **THUKRAL** that the Federal Bureau of Investigation ("FBI") had asked Individual 1 about Individual 1's subcontracting work with the IRS. Referring to the funds that **THUKRAL** demanded and received from Individual 1, Individual 1 told **THUKRAL** that the FBI had bank reports indicating Individual 1 had withdrawn over $100,000 in cash from Individual 1's bank accounts in two years. Individual 1 asked **THUKRAL** what **THUKRAL** had done with the money, and **THUKRAL** stated that he (**THUKRAL**) still had $25,000, but that the rest was gone. In order to conceal that Individual 1 had made the payments to **THUKRAL**, **THUKRAL** instructed Individual 1 to tell multiple lies to the FBI about the nature of the cash withdrawals, such as by telling the FBI that Individual 1 had given the cash to someone in India.

Later, on or about the same date (February 10, 2023), **THUKRAL** gave Individual 1 $37,000 in cash spread across three bank envelopes and one plain white envelope. The three bank envelopes matched envelopes that Individual 1 had previously used in paying **THUKRAL**. The purpose of returning those funds was to assist and induce Individual 1 to lie to the FBI and to further the concealment of the payments that **THUKRAL** demanded and received from Individual 1.

### **THUKRAL's Interactions with CC-1**

CC-1 was a manager at Company 2, which was a U.S. government prime contractor with the IRS. In connection with his role at Company 2, CC-1 supervised a prime contract related to the management of IT with the IRS, which was also supervised by **THUKRAL**.

In or around July 2022, **THUKRAL** and CC-1 began communicating via a "burner phone," which CC-1 provided to **THUKRAL** in order for **THUKRAL** and CC-1 to communicate secretly

in connection with IRS contracting and potential payments to **THUKRAL**. **THUKRAL** and CC-1 communicated approximately three to four times per week using this "burner phone."

On or about August 9, 2022, **THUKRAL** traveled from Maryland to Virginia to meet with CC-1. CC-1 provided **THUKRAL** with approximately $2,800 that CC-1 had received from another individual to pay to **THUKRAL**. One reason CC-1 gave the $2,800 to **THUKRAL** was in return for **THUKRAL** facilitating the continued employment of an individual at Company 3 and an individual at Company 4—both companies being IRS subcontractors with whom CC-1 had an affiliation, and both employees being otherwise underqualified for their positions—to work on existing IRS task orders.

In addition, at the time of the $2,800 cash payment that CC-1 made to **THUKRAL**, **THUKRAL** had been selected to serve on a three-person panel that would have evaluated the technical feasibility of bids for an upcoming IRS contract valued at approximately $200 million. CC-1 believed that **THUKRAL** could influence the technical feasibility valuations to benefit companies with which CC-1 had an affiliation, including Companies 3 and 4.

**THUKRAL** received this payment with corrupt intent in return for being influenced in the performance of official acts and being induced to do or omit to do acts in violation of **THUKRAL**'s official duty.

An envelope containing $2,530 in cash, which remained from a bribe payment, was seized by law enforcement upon execution of a search warrant at **THUKRAL**'s residence on or about September 29, 2023.

SO STIPULATED:

_____
Elizabeth Wright
Christopher M. Sarma
Assistant United States Attorneys

_____
Matt Kahn, Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

_____
Satbir Thukral
Defendant

_____
Barak Cohen, Esq.
Counsel for Defendant